UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CHRISTOPHER LEICHT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   CIVIL NO. 2:12cv486 |
| | ) |
| MICHAEL J. ASTRUE, COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB). 42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since August 29,

      2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq.*).

3.     The claimant has the following severe impairments: low back sprain/pain; generalized anxiety disorder; borderline intellectual functioning; paranoid personality disorder; and learning disabilities (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can understand, remember, and follow at least simple instructions (SVP 2) without special consideration; he is restricted to work that involves brief, superficial interactions with fellow workers, supervisors, and the public; he is able to attend task for sufficient periods of time to complete tasks; and can manage stresses involved with simple work.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on January 2, 1960 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569,404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 29, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-23).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on May 20, 2013. On August 26, 2013, the defendant filed a memorandum in support of the Commissioner's decision, and on September 9, 2013, Plaintiff filed his reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplementary

Security Income (SSI) effective October 23, 2009, alleging that he became disabled on August 29, 2009 (Tr. 211-14, 215-18, 219-20), due a left leg injury, back problems, a learning disability, and anxiety (Tr. 233). His applications were denied initially and upon reconsideration (Tr. 108-11, 112-15, 119-21, 122-24). On August 12, 2011, Plaintiff appeared with his attorney and testified at a hearing before an Administrative Law Judge (ALJ); a vocational expert also testified (Tr. 29-67). On August 25, 2011, the ALJ issued a decision in which she found that Plaintiff was not disabled under the Social Security Act (the Act) because he was able to perform jobs that existed in significant numbers in the national economy (Tr. 10- 28). The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision (Tr. 1-6), at which point the ALJ's decision became the final decision of the Commissioner.  Plaintiff filed this civil action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of the Agency's decision.

Plaintiff was 51 years old when the ALJ issued his decision (Tr. 21, 23). He had completed the tenth grade of school (Tr. 38) and he had past relevant work as a cemetery worker (Tr. 21).

As detailed above, the ALJ found that Plaintiff met the disability insured status requirements of the Act through December 31, 2011, and that he had not engaged in substantial gainful activity since the onset date of his alleged disability, August 29, 2009 (Tr. 15). The ALJ found that Plaintiff had the following severe impairments: low back sprain/pain, generalized anxiety disorder, borderline intellectual functioning, paranoid personality disorder, and learning disabilities; but he did not have an impairment or combination of impairments that met or medically equaled any of those included in the Listing of Impairments at 20 C.F.R. pt. 404,

subpt. P, app. 1 (Tr. 15-16). The ALJ found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of hi symptoms were not entirely credible (Tr. 19-20). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform medium work, except that he could understand, remember, and follow at least simple instructions without special consideration; engage in superficial interactions with fellow workers, supervisors, and the public; attend to task for sufficient periods of time to complete tasks; and manage stresses involved with simple work (Tr. 18). The ALJ found that, given this RFC, Plaintiff could not perform his past work but could perform other jobs that existed significant numbers in the national economy, and that he was therefore not disabled (Tr. 21-23). See 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ recognized that Plaintiff had severe impairments, but she concluded that, despite those impairments, he was nevertheless able to perform the exertional requirements of medium work, with no limitations on the ability to perform postural activities and other physical non-exertional tasks (Tr. 18). The ALJ reached this RFC finding by considering the medical record as a whole as well as factors relevant to Plaintiff's credibility. In light of the absence of almost any treatment records other than from the emergency room regarding physical impairments, the ALJ relied in large part of the findings of the consultative examiner for physical conditions, as well as the state agency reviewing physician. Ultimately, in evaluating Plaintiff's RFC, the ALJ gave the greatest weight to the opinions of Mutana Korman, M.D., the physical consultative examiner who saw Plaintiff in May 2010 (Tr. 394-99), and D. Neal, M.D., a state agency doctor who reviewed Plaintiff's entire claim file in June 2011 (Tr. 400-07), both of whom offered their opinions regarding Plaintiff's physical functional limitations.

With respect to Plaintiff's leg complaints, the ALJ pointed out that the medical record failed to support this claim (Tr. 19). She noted that the few physical examinations conducted at Porter Valparaiso Hospital revealed no complaints of leg problems or abnormalities (Tr. 19, referring to Tr. 320-67). She also pointed out that Plaintiff did allege leg pain at the consultative examination with Dr. Korman and had some difficulty walking heel to toe or tandemly, but he ambulated without an assistive device (Tr. 19, referring to Tr. 394-99). She noted that the physical examination was essentially normal with no signs of edema, stiffness, effusion, or atrophy in the lower extremities; no visible skin discoloration or poor circulation, a full range of motion in each joint and full strength in all major muscle groups; no sensory loss and palpable peripheral pulses (Tr. 19, referring to Tr. 396).

With regard to Plaintiff's back complaints, the ALJ noted that Plaintiff had sought some treatment for this problem, but concluded that the evidence only supported the degree of limitation set forth in the RFC (Tr. 19). She noted that the emergency room examination on July 11, 2011, revealed a baseline gait as normal (Tr. 19, referring to Tr. 432). Plaintiff said the pain was not worsened by any movement, there was no radiation of back pain, and the pain was dull and nagging (id.). He had normal muscle strength and tone, no lower extremity weakness, no sensory or reflex abnormalities, and he walked without difficulty (id.). He did have muscle spasm in his back and a decreased range of motion, but his recent records showed his pain was likely caused by muscle strain without any significant deformity of the spine (Tr. 19-20, referring to Tr. 433). The ALJ noted that these slight abnormalities in the context of a mostly normal examination and absent pain treatment did not warrant finding that Plaintiff could do less than what was set forth in the RFC (Tr. 20).

Additionally, as the ALJ noted, Dr. Korman, the consultative examiner, opined that Plaintiff had no physical limitations that prevented him from holding a full-time job (Tr. 396). He did state that Plaintiff should undergo some physical therapy (id.). Subsequently, Dr. Neal reviewed the record, including Dr. Korman's report, and concluded that Plaintiff could perform the exertional requirements of medium work with no physical non-exertional limitations (Tr. 400-07). The ALJ gave this opinion great weight in light of Dr. Neal's expertise. Specifically, she noted that Dr. Neal did not find any postural limitations, such as an inability to stoop (Tr. 21)

Plaintiff argues that the ALJ's physical RFC finding did not fully account for his limitations, particularly his alleged difficulty stooping. The full range of medium work requires, inter alia, frequent bending and stooping. See SSR 83-13. Plaintiff points out that during a physical consultative evaluation, Dr. Korman noted that Plaintiff had difficulty standing from a sitting position as well as stooping and/or squatting. (Pl.'s Br. at 11, citing Tr. 396). Plaintiff argues that, based on this consultative examination, it is unclear how Dr. Korman concluded that Plaintiff had no limitations regarding full time work, or how Dr. Neal found that Plaintiff could perform medium work. Id., citing Tr. 396, 401. Plaintiff notes that the ALJ stated she gave significant weight to Dr. Korman's opinion and great weight to that of Dr. Neal. Id., citing Tr. 20-21.

Plaintiff argues that the ALJ erred by failing to explain how she reconciled Dr. Korman's examination findings, as well as Plaintiff's testimony that he had difficulty stooping with her RFC determination. He claims that the ALJ failed to resolve a material conflict in the record. However, as noted earlier, the ALJ stated specifically that in considering the record, including Dr. Korman's report, Dr. Neal "found the claimant capable of medium work with no postural

8

restrictions such as the inability to stoop. Dr. Neal is experienced in disability evaluation and reviewed the claimant's record . . . . His opinion is well supported and not inconsistent with the record" (Tr. 21). In this context, it should be remembered that Dr. Korman's observation about some difficulty stooping appears to be an isolated finding in the record. The ALJ properly adopted Dr. Neal's assessment. See Diaz, 55 F.3d at 307–08:

> An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning. An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required . . . . [But] an ALJ need not provide a complete written evaluation of every piece of testimony and evidence . . . . Because we can 'track the ALJ's reasoning and be assured that the ALJ considered the important evidence,' we believe that the ALJ has met the minimal articulation standard.") (citation omitted).

As further discussed below, the ALJ examined both the objective and other evidence in evaluating Plaintiff's credibility, as required by law. 20 C.F.R. § 404.1529(c). Contrary to Plaintiff's claim that the ALJ relied only on the medical evidence in this case, the ALJ pointed out that Plaintiff said he took no pain medication and said he only lay down to relieve pain, but that did not help (Tr. 19, referring to Tr. 39-40). The ALJ also noted that, aside from the consultative examination performed in connection with his quest for disability benefits, Plaintiff did not seek any treatment or voice any complaints about his leg (Tr. 19).

In considering Plaintiff's mental impairments, the ALJ found that Plaintiff had a mild restriction on the activities of daily living, noting that his alleged limitations in this area related to his physical claims, not his mental condition (Tr. 20). The ALJ found that Plaintiff had moderate limitations in social functioning, given his tendency to be suspicious and mistrustful of others and the diagnosis of a paranoid personality disorder by Dr. Rini, the consultative examiner who evaluated Plaintiff in May 2010 (Tr. 391-93) The ALJ noted that Plaintiff had maintained

employment at the funeral home for five years before stopping due to a physical condition, rather than because of difficulty getting along with others (Tr. 17, referring to Tr. 369).

The ALJ likewise concluded that Plaintiff had moderate difficulties in concentration, persistence, or pace (Tr. 17). The ALJ pointed out that consultative examiner Dr. Rini stated on May 17, 2010, that Plaintiff had below average concentration and memory (Tr. 17, referring to Tr. 392). Earlier, in 2006, after administering intelligence testing, Dr. Rini opined that Plaintiff's concentration and memory abilities were average (Tr. 17 referring to Tr. 302). The ALJ also noted that consultative examiner Dr. Gary Durak, another psychologist, opined in March 2010 that Plaintiff had adequate concentration and memory (Tr. 17, referring to Tr. 369).

With regard to Plaintiff's mental impairments, the ALJ noted that he was independent in daily activities. (Tr. 20). She noted that he returned to live with his mother for financial reasons, not due to an inability to care for himself (id.). She also noted that he discontinued working due to a leg injury, not because of social difficulties at work (id.). The ALJ accommodated his social difficulties by restricting him to brief, superficial interaction with fellow workers, supervisors and the public (id.). With regard to the ability to concentrate and attend, the ALJ noted that Plaintiff was not bothered by anxiety or depression during psychiatric testing (Tr. 20, referring to Tr. 300). She noted that with a low average memory, he was still able to recall household items, how Christmas Day was spent, his place of birth, and his elementary school (Tr. 20, referring to Tr. 392). He successfully completed serial subtraction in less than one minute with only two errors (id.). The ALJ concluded that these factors, together with his ability to make cash transactions, drive and complete tasks, supported the finding that he could do simple SVP 2 (unskilled) tasks and manage stresses in connection with such work (Tr. 20).

Plaintiff next argues that the ALJ erred by failing to discuss the opinions of Amy S. Johnson, Ph.D., and Ken Lovko, Ph.D., the state agency psychologists who reviewed the record after the consultative examination by Dr. Victor Rini, a consulting psychologist, and offered their opinions regarding Plaintiff's mental functional capacity. However, it is clear that these opinions were consistent with the ALJ's mental RFC finding and not inconsistent with other medical opinions. Plaintiff argues that Dr. Johnson's opinion that Plaintiff had moderate limitation in "the ability to sustain an ordinary routine without special supervision." is inconsistent with the ALJ's mental RFC finding that Plaintiff could only work in an environment with "brief, superficial interactions with fellow workers, supervisors, and the public." Pl.'s Br. at 13, citing Tr. 18, 372. According to Plaintiff, these statements conflict because special supervision would require more than brief, superficial interaction with the supervisor. However, the record does not show that a moderate limitation in this area would require special supervision requiring more than superficial interaction with a supervisor.

More importantly, it should be noted that the part of the mental RFC form on which Dr. Johnson could place check marks indicating "not significantly limited"; "moderately limited"; "markedly limited" "no evidence...." etc. in many categories of mental functioning is Section I (Summary Conclusions), in which the medical provider is instructed to save a detailed explanation of the degree of each limitation and any other assessment information for Section III (Functional Capacity Assessment) at the end of the form (Tr. 372; see Tr. 372-75). In Section III of this form, Dr. Johnson stated the following:

> Careful consideration has been given to the claimant's statements regarding alleged symptoms and their effects on functioning. Claimant's allegations of [symptoms] appear credible as these are supported by Consultant and ME. However, in terms of level of severity of functioning [claimant's] allegations

11

> appear partially credible given [activities of daily living] appear [with no loss], attention and concentration are moderately impacted but appear reasonable for tasks, and [claimant] appears to be able to tolerate superficial, casual interactions with others.
>
> Claimant has the mental capacity to understand, remember, and follow at least simple instructions. [Claimant] is restricted to work that involves brief, superficial interactions [with] fellow workers, supervisors and the public. Within these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, [claimant] is able to sustain attention and concentration skills to carry out work like tasks with reasonable pace and persistence.

Tr. 375. This assessment, prepared by the psychologist who completed the earlier part of the form (Summary Conclusions), containing the sections on special supervision etc., is almost identical to the ALJ's mental RFC determination (Tr. 18).

Plaintiff also contends there is an inconsistency between Dr. Johnson's assessment of a moderate limitation in "the ability to accept instructions and respond appropriately to criticism from supervisors" (Tr. 373) and the ALJ's limitation to "brief, superficial interactions with supervisors" in her RFC assessment (Tr. 18). Pl.'s Br. at 13-14. As noted, the limitations found by the ALJ here are taken directly from Dr. Johnson's assessment. Plaintiff argues that where an individual has anxiety and some level of paranoia, no matter how brief the interaction with the supervisor, he would not be able to accept criticism. Pl.'s Br. at 14. However, Plaintiff's argument is unsupported by medical evidence.

Plaintiff argues that his limitations in cooperating with co-workers and supervisors is inconsistent with an ability to sustain unskilled work, which requires the ability to handle criticism from supervisors. Pl.'s Br. at 15, citing SSR 85-15, *6, <u>Stewart v. Astrue</u>, 561 F.3d 679, 684-85. The record does not, however, show that Plaintiff cannot handle any criticism from supervisors or others. At the cited point in SSR 85-15, the Ruling speaks of the effects of

12

stress on the ability to work, which it notes is highly individualized. Plaintiff claims that he could not work with co-workers and supervisors, regardless of the brevity or superficiality of the interactions. He supports this claim by pointing to his statement that, while employed by the funeral home, he got into arguments with co-workers and his boss and "ended up walking off the job at times." Pl.'s Br. at 14, referring to Tr. 45. Nevertheless, as the ALJ pointed out, the record shows that Plaintiff left that job due to his leg injury, not due to problems getting along (Tr. 17, 20). Notably, this is not a case where the opinion of the state agency reviewing physician or psychologist was contrary to the opinion of another treating or examining physician. Rather, the record is devoid of any other opinions about Plaintiff's mental condition.

Plaintiff argues that, while the ALJ concluded that he had moderate limitations in concentration, persistence, or pace, she improperly failed to address evidence suggesting greater limitations in this area. Pl.'s Br. at 15, referring to Tr. 17. In particular, he refers to Dr. Allen's opinion that Plaintiff had impaired short term memory, particularly on immediate and delayed recall tasks and physical consultative examiner Dr. Korman's observation that Plaintiff displayed "memory loss and difficulty with concentration and focus." Pl.'s Br. at 15-16, referring to Tr. 307, 395. Plaintiff contends that the ALJ was required to discuss this evidence because the psychological consultants, Drs. Rini and Durak, found average/adequate memory functioning. However, the evidence from Dr. Allen comes from outside the period covered by these applications (Tr. 306), and Dr. Korman performed a physical examination that ended with his statement that Plaintiff had no physical limitations that precluded full-time work (Tr. 396). The ALJ was not required to discuss an observation of a one-time examining physician in an area not within his expertise.

13

Plaintiff also contends that the mental RFC is deficient under the rubric of O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010), because the limitation to simple work does not account for a moderate limitation in concentration, persistence, or pace and the ability to do sustained work over a period of time. Pl.'s Br. at 16. Here, however, Dr. Johnson made clear that she thought that limiting Plaintiff to simple tasks takes into account Plaintiff's moderate limitations in concentration, persistence, or pace (Tr. 375). Further, the ALJ's RFC indicated that Plaintiff could handle the stress of simple work and attend to tasks on a sustained basis (Tr. 18). Finally, the difference between the ALJ's RFC determination and Dr. Johnson's use of the phrase "simple, routine, repetitive, concrete, tangible tasks" does not require a remand of this case. The terms used by Dr. Johnson are not terms of art. In O'Connor-Spinner, 627 F.3d at 620, the Seventh Circuit found "simple, repetitive" to be insufficient for explaining a moderate limitation in concentration, persistence, or pace. The terms "routine, repetitive, concrete, [and] tangible" tasks do not deal with the issue of concentration, persistence, or pace, as set forth in O'Connor-Spinner. That issue is dealt with in the remainder of the RFC determination. Finally, Plaintiff contends that the ALJ erred in excluding limitations based on his paranoid personality disorder in his mental RFC. Pl.'s Br. at 16. However, Plaintiff is essentially asking the ALJ to medically evaluate Plaintiff's "paranoia" when none of the psychologists indicated further evaluation was needed.

It is also clear that substantial evidence supports the ALJ's credibility determination. The record shows that the ALJ examined both the objective and other evidence in evaluating Plaintiff's credibility, as required by law. 20 C.F.R. § 404.1529(c). The ALJ discussed many of the elements related to non-medical evidence relevant to a credibility findings under SSR 96-7p

(Tr. 20). She noted that Plaintiff had not pursued persistent and appropriate medical treatment, given his allegations (id.). In addition, she noted an inconsistency between his complaints to medical sources and those expressed at the hearing (Tr. 20). She noted that he generally did not describe leg pain during examinations (id.). The ALJ pointed out that Plaintiff was not consistent in his complaints (id.). Thus, he testified to severe leg pain, but voiced no such complaint during examinations. He alleged significant balance problems and frequent falling, however he reported to health care providers only weeks before the hearing that he had no history of falling, and they assessed he was not a falling risk (Tr. 20, referring to Tr. 432).

Plaintiff argues that the ALJ erred in evaluating the credibility of his allegations. He contends that the ALJ found that Plaintiff's complaints of physical impairments did not support ongoing leg pain, despite contrary evidence in the record that the ALJ failed to discuss. Pl.'s Br. at 18, referring to Tr. 19. Plaintiff notes that Plaintiff alleged leg pain at the examination with Dr. Korman, who noted some difficulty heel to toe walking and tandem walking. Id., referring to Tr. 394-99. He states that the ALJ failed to explain why this evidence was less persuasive than other evidence showing normal muscle strength and full range of motion. But the medical record, as discussed by the ALJ, contains significant normal findings regarding the left leg and only isolated findings of any abnormalities. The ALJ was not required to discuss this evidence. Pepper v. Colvin, 712 F.3d 351, 363 (7th Cir. 2013). ("[A]n ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence.").

Plaintiff also argues that the ALJ relied too heavily on the objective evidence in considering his back pain, while failing to discuss his testimony that he had back pain "every day

15

and night" that was difficult to tolerate. Pl.'s Br. at 18, referring to Tr. 40. Plaintiff points out that ALJ may not rely exclusively on the medical evidence in discounting the credibility of a claimant's complaints. Pl.'s Br. at 19. But that is not what the ALJ did here. Rather, in the light of a scant record, the ALJ discussed various factors, other than medical evidence, relevant to a credibility determination. In addition, Plaintiff points about that, when he went to the emergency room at Porter Hospital, the doctor noted that noted moderately abnormal straight leg raising on the left. Pl.'s Br. at 19, referring to Tr. 432. Plaintiff points out that a positive straight raising test can indicate sciatic nerve involvement. Pl.'s Br. at 19 fn 10. Yet the record shows that Plaintiff had no neurological deficits on numerous examinationd. Moreover, at the emergency room, the neurological examination was normal, Plaintiff was given steroids and advised to exercise (Tr. 433). Given his history, the emergency doctor concluded he had a back strain, nothing more serious (id.).

Lastly, Plaintiff claims the ALJ erred by employing boilerplate language in her credibility finding, language which has been disapproved by the Seventh Circuit. Pl.'s Br. at 21, referring to Tr. 19, citing Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012). However, the Seventh Circuit has more recently held that "the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination."). Pepper, 712 F.3d at 367–68.

As substantial evidence supports the ALJ's decision, the decision will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: October 22, 2013.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court